**JIANGSU CHANGLONG CHEMICALS, CO., INC., Plaintiff,**

v.

**BURLINGTON BIO–MEDICAL & SCIENTIFIC CORPORATION, Defendant.**

No. CV05–2082.

United States District Court, E.D. New York.

Nov. 22, 2005.

Davis Wright Tremain LLP, By Robert D. Balin, Esq., New York, NY, for Plaintiff.

Silverman Perlstein & Acampora LLP, By Kimberly A. Luckey, Esq., Jericho, NY, for Defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an action commenced by Plaintiff Jiangsu Changlong Chemicals, Co., Inc. ("Changlong"), pursuant to Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 201 (the "Convention"). Changlong seeks recognition and enforcement of an award made in China after an arbitration in which both parties participated. China is a signatory to the Convention and this court has original jurisdiction over this matter pursuant to 9 U.S.C. § 203. For the reasons set forth below, Changlong's motion for summary judgment seeking recognition and enforcement of the award is granted.

## BACKGROUND

### I. The Contracts And The Agreement To Arbitrate

Plaintiff Changlong is a limited liability company, organized under the laws of the People's Republic of China. Defendant Burlington Bio–Medical & Scientific Corporation ("Burlington") is a corporation organized pursuant to the laws of the State of New Jersey. Changlong's principal place of business is in China and that of Burlington is located in this District.

At various times between May and October of 2002, Changlong and Burlington entered into eight contracts (the "Contracts") for the sale of an insecticide sold under the name "Carbaryl." Each of the Contracts provided for Changlong to deliver to Burlington a specific quantity of Carbaryl. Each contract set forth specific payment and shipping terms and each contained a clause providing for settlement of any dispute through amicable negotiation. In the event that such negotiation failed to settle any dispute, the Contracts provided that disputes were to be submitted to the China International Economic and Trade Arbitration Commission for resolution through arbitration. The parties to the Contracts agreed that the decision reached after such arbitration was to be final and binding.

### II. The Dispute That Led To The Arbitration

There is no dispute regarding delivery of the Carbaryl, pursuant to the Contracts, by Changlong. There is similarly no dispute that Burlington failed to make full and timely payment. Correspondence between the parties indicates that Burlington

requested, and Changlong agreed, to several extensions of time in which to make full payment. Burlington made a partial payment of $248,400 due under one of the Contracts. Full payment, however, was never received and Changlong claims to be owed in excess of $1.7 million.

## III. *The Arbitration And The Award*

On August 21, 2003, Changlong initiated arbitration pursuant to the Contracts. Changlong sought $1,775,880 allegedly owed under the Contracts as well as contractual penalty payments in excess of $1.5 million. Changlong also sought arbitration and attorneys' fees, as provided in the Contracts, and in accord with the applicable procedural rules of arbitration.

On September 5, 2003, the body conducting the arbitration (the "Arbitration Commission" or the "Commission") sent the parties hereto the arbitration notice, arbitration rules and a list of potential arbitrators. Additionally, Burlington was sent Changlong's arbitration application as well as a copy of the evidence that Changlong submitted to the Commission. Changlong selected one arbitrator, but Burlington failed to designate a preferred arbitrator. Accordingly, the Commission selected the remaining two arbitrators that were to serve as the tribunal hearing the parties' dispute (the "Tribunal"). On October 30, 2003, the parties were mailed notice of the identity of the members of the Tribunal.

The arbitration was set to begin on December 9, 2003. Notice of this date was mailed to Burlington on October 30, 2003. Upon receipt of this notice, Burlington informed the Commission that it was unable to obtain necessary visas to attend the arbitration and the December 9 hearing was adjourned. Thereafter, the Tribunal scheduled the hearing for February 17, 2004.

On February 17, 2004, the arbitration was held. Both Changlong and Burlington designated local Chinese attorneys to appear as their agents at the hearing. As set forth in the arbitration award, these agents participated fully in the proceeding. Each side debated and responded to questions and submitted proposed opinions to the Tribunal.

The final decision of the Tribunal is memorialized in a detailed award that is dated June 23, 2004 (the "Award").[1] The Award details the terms of the Contracts and Burlington's numerous requests for extensions of time in which to make payment. The Tribunal noted that full payment was never made and rejected Burlington's defense that the Carbaryl price was in violation of the parties' separate "cooperation" agreement. Concluding that Burlington beached its obligations under the Contracts, the Award holds Burlington liable for the $1,775,880 sought by Changlong. The Award denied Changlong the $1.5 million penalty but granted the request for attorneys' fees. Finally, the Award held that 20% of the arbitration fee should be borne by Changlong and the remainder was to be paid by Burlington. Burlington was ordered to make payment to Changlong within 45 days of the Award. In the event that such payment was not made, Burlington was to bear an additional interest payment of 6%.

## IV. *The Present Action And The Motion For Summary Judgment*

Burlington's failure to make any payment under the Award prompted the filing of this lawsuit seeking recognition and enforcement of the Award. The motion presently before the court seeks summary judgment on this single claim.

---

**1.** On July 7, 2003, the Award was amended to correct certain typographical errors.

## DISCUSSION

### I. Grounds for Enforcement of Foreign Arbitral Awards Pursuant to the Convention

Countries that are parties to the Convention, including the United States and China, agree to recognize each other's arbitral awards and to enforce them in accord with the rules of procedure of the place where the award is relied upon. *See Geotech Lizenz AG v. Evergreen Sys., Inc.,* 697 F.Supp. 1248, 1252 (E.D.N.Y.1988). Conformation of a foreign arbitral award is characterized as a "summary proceeding" that merely converts what is already a final decision into a judgment of a court. *MGM Productions Group, Inc. v. Aeroflot Russian Airlines,* 2003 WL 21108367 *2 (S.D.N.Y.2003).

The procedure for obtaining enforcement of a foreign award is straightforward. The party seeking enforcement need only submit an authentic copy of the award, the agreement to arbitrate and, if the award is in a language other than English, a duly certified translation. *See* Convention Art. IV; *Geotech,* 697 F.Supp. at 1252. Upon submission of these materials, a party resisting confirmation bears the burden of showing that one of the circumstances warranting denial of enforcement, as set forth in the Convention, is present. *See Montauk Oil Transportation Corp. v. Steamship Mutual Underwriting Assoc.(Bermuda) Limited,* 1995 WL 361303 *1 (S.D.N.Y.1995), *aff'd.,* 79 F.3d 295 (2d Cir.1996). Those circumstances are limited and, in view of the strong public policy favoring arbitration, are to be narrowly construed. *See In Matter of Arbitration Between Overseas Cosmos, Inc. and NR Vessel Corp.,* 1997 WL 757041 *2 (S.D.N.Y.1997); *Geotech,* 697 F.Supp. at 1252.

### II. Burlington's Defense to Enforcement

There is no question that Changlong has complied with the Convention's procedure for obtaining recognition and enforcement of the Award. Thus, agreements to arbitrate (as set forth in the Contracts), an authentic copy of the Award and an English translation thereof are all before the court. The burden of resisting Changlong's motion for summary judgment on its claim for recognition and enforcement is therefore upon Burlington.

Arguing against enforcement of the Award, Burling contends that it was "prevented from adequately presenting its defense." This argument can only be characterized as falling within Article V(1)(b) of the Convention, which provides that a party resisting confirmation must show that it was not given notice of the arbitration or was "otherwise unable to present its case." Convention Art. V(1)(b). Successful reliance on this provision requires a showing that the arbitration was conducted in violation of this country's standards of due process of law. *Parsons & Whittemore Overseas Co., v. Societe Generale De L'Industrie Du Papier,* 508 F.2d 969, 975 (2d Cir.1974). To comport with due process parties to an arbitration must be given "notice reasonably calculated" to inform them of the proceedings and "an opportunity to be heard." *Anhui Provincial Import and Export Corp. v. Hart Enters. Internat'l., Inc.,* 1996 WL 229872 *3 (S.D.N.Y.1996); *see also In Matter of Arbitration Between Overseas Cosmos, Inc. and NR Vessel Corp.,* 1997 WL 757041 *4 (S.D.N.Y.1997) (party relying on Article V(1)(b) defense "must establish that it was denied the opportunity to be heard at a meaningful time or in a meaningful manner"), quoting, *Ukrvneshprom State Foreign Econ. Enter. v. Tradeway, Inc.,* 1996 WL 107285 *5 (S.D.N.Y.1996).

In support of its argument, Burlington argues that company representatives were prevented from obtaining the necessary visas to travel to China to present its case at the arbitration. While Burlington acknowledges that it engaged the services of a Chinese law firm to attend the arbitration and authorized that firm to act on its behalf, it argues that its inability to have a company representative in China prevented it from presenting a proper defense.

### III. *Disposition of the Motion*

There is no evidence before the court properly supporting Burlington's claim that it was somehow prohibited from presenting its defense. First, the record is clear that Burlington sought and was granted an adjournment of the initial arbitration date set based upon the same argument made here. Instead of seeking any additional adjournment, Burlington engaged the services of a Chinese law firm to appear at the arbitration. As set forth in the Award, that firm acted as Burlington's agent and presented argument on the company's behalf.

Burlington's appointment of counsel is before the court in the form of a duly executed Power of Attorney granting local counsel the rights to: (1) appear at the arbitration; (2) acknowledge, amend or withdraw arbitration; (3) negotiate and settle with Changlong; (4) sign related arbitration documents and files on behalf of Burlington and (5) any "other appropriate powers granted by Burlington." The delegation of authority to appear at the arbitration on Burlington's behalf could not be clearer and completely belies any argument that Defendant was unable to present its defense.

Having decided to appear at the arbitration, rather than seek further adjournment of the proceeding, Burlington can not now be heard to complain that it was prohibited from presenting its case. The company made a clear to choice to arbitrate. Any second thoughts about the effectiveness of the representation it chose does not now entitle Burlington revisit that decision. Finally, there is no question but that the mere refusal to reschedule an arbitration so that a particular witness may testify does not violate due process so as to require denial of enforcement. *Parsons & Whittemore,* 508 F.2d at 975.

There is no evidence, or question of fact raised, regarding the fundamental fairness of the arbitration. The procedures employed by the Tribunal satisfied Burlington's due process rights to notice and the opportunity to be heard. Under these circumstances, summary judgment is appropriate and is granted to Changlong.

### CONCLUSION

In light of the foregoing, the court grants the motion for summary judgment seeking recognition and enforcement of the Award. Plaintiff may submit a judgment, on notice, granting it the relief set forth in the Award. The Clerk of the Court is directed to terminate the motion and to close the file in this matter.

SO ORDERED.